UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| EDDIE HENSLEY, | Case No. 1:21-cv-01749-CDB (SS) |
|---|---|
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1] |
| v. | (Docs. 24, 26, 27) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Eddie Hensley ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 24, 26, 27). Upon review of the Administrative Record (Doc. 23-1, "AR") and the parties' briefs, the Court finds and rules as follows.

**I.   BACKGROUND**

**A. Administrative Proceedings and ALJ's Decision**

Plaintiff filed a Title XVI application for supplemental security income on October 25, 2018. (AR 303-11). Plaintiff's application was denied initially and upon reconsideration, and

---

[1] Following the parties' election to consent to magistrate judge jurisdiction for all purposes, the undersigned was authorized to preside over all proceedings effective January 28, 2022, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 10).

1  Plaintiff requested a hearing before an administrative law judge ("ALJ").  (AR 244-51, 268-73).
2  On October 28, 2020, ALJ Shiva Bozarth held a hearing, during which Plaintiff, represented by
3  counsel, and an independent vocational expert testified.  (AR 35-57).  The ALJ issued his
4  decision on February 8, 2021, finding Plaintiff not disabled.  (AR 16-28).  On October 15, 2021,
5  the Appeals Council declined Plaintiff's request for review.  (AR 1-3).

6  At the outset of his decision, ALJ Bozarth noted that Plaintiff was found not disabled in a
7  prior November 29, 2017 ALJ decision, such that "the provisions of *Chavez v. Bowen* and
8  Acquiescence Ruling 97-4 must be considered."  (AR 16-17).  ALJ Bozarth concluded the
9  presumption of continuing disability under *Chavez* did not apply because there was "a showing of
10 changed circumstances affecting the issue of disability and … new and material evidence relating
11 to the issue of disability."  (AR 17).  Specifically, the evidence showed "a change in [Plaintiff's]
12 severe impairments with the addition of degenerative disc disease and the need for a cane" and
13 there was documentary medical evidence submitted following the prior decision.  (AR 17).

14 The ALJ then engaged in the five-step sequential evaluation process set forth by the
15 Social Security Administration.  20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ
16 found Plaintiff had not engaged in substantial gainful activity since October 25, 2018, the
17 application date.  (AR 19).  At step two, the ALJ determined that Plaintiff had the following
18 severe impairments: "degenerative disc disease, cardiomyopathy, status post implanted
19 defibrillator, coronary artery disease (CAD) and congestive heart failure (CHF)."  (AR 19).  At
20 step three, the ALJ found that Plaintiff did not have an impairment, or combination of
21 impairments, that met or medically exceeds the severity of one of the listed impairments in 20
22 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 20-21).

23 The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform
24 light work as defined in 20 C.F.R. § 416.967(b), with the exception that he could lift and carry 20
25 pounds occasionally and 10 pounds frequently.  (AR 21).  Additional limitations included that
26 Plaintiff could "stand and walk about 3 hours out of an 8-hour workday," could "sit for 6 hours
27 out of an 8-hour workday," needed to "change positions from standing or walking to a seated
28 position after 30 minutes for 5 minutes while remaining on task," and needed "to use a cane to

stand or walk for more than 15 minutes or walk across uneven terrain." (AR 21). Plaintiff could "occasionally climb ramps and stairs, but never ladders or scaffolds," could "frequently balance, stoop, kneel, crouch, or crawl," but could not "work in extreme heat or cold or at unprotected heights or around fast moving machinery." (AR 21). In formulating the RFC, the ALJ found the prior administrative medical findings ("PAMFs") from the State agency medical consultants persuasive and found opinions from three of Plaintiff's providers—Dr. Sulman Razzaq and nurse practitioners Analene Cesar[2] and Andrea Velasquez—unpersuasive. (AR 24-26).

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (AR 26). At step five, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in the national economy, such as mailroom clerk, office helper, and information clerk. (AR 27). Accordingly, the ALJ found Plaintiff had not been under a disability from October 28, 2015, the application date, through the date of decision. (AR 28).

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.  STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (*Id*. at 1159) (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." (*Id*.) (citation modified). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in

---

[2] The ALJ incorrectly refers to this individual as "Analoque Z. Cezar." (AR 24).

3

isolation. (*Id.*).

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. (*Id.*). An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." (*Id*). (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of

impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." 20 C.F.R. § 416.920(e). Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### III.   ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his application. (Doc. 1). Plaintiff raises the following two issues:

1) The Commissioner erroneously relied on the state agency physician opinions that were based on their admitted adoption of the prior administrative law judge's findings. Given the current administrative law judge's explicit finding that *Chavez* did not apply because there *had been material changes*, the Commissioner erred in adopting the state agency physician opinions premised on the *lack of any material changes*.

2) The Commissioner erroneously rejected the opinions of Dr. Razzaq (treating cardiologist), NP Cesar (treating provider), and FNP Velasquez (treating provider) based on alleged inconsistencies with the record and with Mr. Hensley's daily activities. The record does not support the Commissioner's rationale as to consistency and supportability.

(Doc. 24 at 4). While Plaintiff frames his arguments as two separate issues, in both instances Plaintiff is challenging the ALJ's treatment of medical opinions and PAMFs.

### A. Legal Standard

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's current regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under the regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 416.920c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from medical source individually"); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 416.920c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 416.920c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 416.920c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative finding based on these two factors. 20 C.F.R. § 416.920c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 415.920c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 416.920c(d). Nonetheless, the Court must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

**B. PAMFs**

State agency medical consultant Dr. J. Mitchell reviewed the medical record at the initial level and Dr. L. DeSouza conducted the review at the reconsideration level. (AR 208, 227). The

ALJ found their opinions persuasive, explaining:

> State agency medical consultants reviewed the evidence of record and noted that since the prior ALJ decision, the claimant's cardiac status has remained fairly stable including November 2018 cardiac catheterizations with coronary angiogram's showing no coronary artery disease. He continues to have cardiomyopathy with ejection fractions of 45-50% and still has a cardiac pacemaker. NCS/EMG in December 2018 was normal with no evidence of large fiber peripheral polyneuropathy, nerve entrapment or lumbar radiculopathy. Primary care physicians noted fairly normal physical examinations except for mildly reduced range of motion and muscle spasms with normal gait, and deep tendon reflexes. Claimant's hypertension was nonsevere. Functionally, J. Mitchell, M.D. concluded the claimant can lift and carry 20 pounds occasionally and frequently 10, stand and/or walk for 5 hours and sit for 6 hours in an 8-hour workday. The claimant may stand up to 3 hours a day in 30-minute increments with 5 minutes on task sitting break. The claimant may walk up to 2 hours a day in 30-minute increments with 5 minutes on task sitting break. The claimant may sit up to 6 hours a day. The claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds, and frequently balance, stoop, kneel, crouch and crawl. The claimant should avoid all exposure to extremes of temperature and should avoid even moderate exposure to hazards. He can occasionally work around unprotected heights and dangerous machinery (Exhibit D4A). L. DeSouza, M.D., reviewed the evidence of record in July 2019 and other there was no evidence for progression/deterioration of the claimant's idiopathic CMP and he was currently stable. He affirmed the initial conclusion (Exhibit D6A). This opinion is found to be persuasive as it is based upon review of the evidence of record, noting that evidence received at the hearing level does not support further limitation. Regarding the claimant's heart condition, evidence of record reveals his ejection fraction has been stable around 45-50%, and he was recently cleared for back surgery, which tends to suggest his heart condition is stable. Nevertheless, there is indication that the claimant uses a cane, which has been included in my capacity statement (Exhibits 1F/17; 2F/4; 27F/37).

(AR 24-25).

Plaintiff argues that because the ALJ concluded "res judicata/*Chavez* did not apply to the instant claim due to a material change in severe impairments, including degenerative disc disease, the ALJ erred in relying on the opinions of the state agency physicians that adopted the opinion of the prior administrative law judge based on lack of material change." (Doc. 24. At 15). Plaintiff asserts that the ALJ "did not realize that the state agency physicians adopted the RFC assessment of the prior administrative law judge decision." (*Id.* at 17). Additionally, Plaintiff argues the "state agency physicians did not review the bulk of the medical evidence in this case" and

8

1  rendered their opinions "without knowledge that [Plaintiff] would require lumbar spine surgery."
2  (*Id.*).

3  Defendant responds that in raising his argument, Plaintiff "does not address the ALJ's
4  analysis of the supportability or consistency of these opinions, and thus concedes the ALJ's
5  articulation was sufficient in this regard." (Doc. 26 at 13). Defendant argues there is nothing to
6  support Plaintiff's contention that the ALJ did not realize the opinions were based on the prior
7  ALJ decision and highlights that the ALJ specifically referenced the opinions with respect to
8  Plaintiff's heart condition while adding additional limitations to account for Plaintiff's back
9  condition. (*Id.* at 13-15). Defendant further argues "the fact that a reviewing physician did not
10 consider all of the evidence in his determination does not require the ALJ to discount his opinion
11 because the regulations require that an ALJ evaluate the degree to which a non-examining source
12 considers the evidence, not that a failure to consider all evidence requires the source to be
13 discounted." (*Id.* at 15 (quoting *Elsey v. Saul*, 782 F. App'x 636, 637 (9th Cir. 2019) (citation
14 modified))).

15 Plaintiff replies that "[n]either the Court nor the parties know whether the state agency
16 physicians might have determined a different RFC had they not applied the *Chavez* presumption."
17 (Doc. No. 27 at 4). Because "the ALJ never acknowledged that the state agency physicians
18 applied *Chavez*," Plaintiff argues the ALJ improperly relied on the opinions and incorrectly
19 adopted portions of the prior RFC. (*Id.* at 4-6).

20 An understanding of the Ninth Circuit's ruling in *Chavez v. Bowen* is important to
21 addressing the parties' arguments. In *Chavez*, the Ninth Circuit addressed the impact of a
22 previous final disability decision on subsequent applications by the same claimant. *See Chavez v.*
23 *Bowen*, 844 F.2d 691, 692-93 (9th Cir. 1988). The Ninth Circuit provided this summary of its
24 *Chavez* ruling: "When a claimant has previously been found not disabled, a presumption of
25 continuing non-disability exists. A claimant can overcome this presumption by proving a changed
26 circumstance. Even if the presumption is overcome, a prior ALJ's decision is entitled to some res
27 judicata consideration absent new evidence." *Nollen v. Kijakazi*, No. 22-35953, 2023 WL
28 5567175, at *1 (9th Cir. Aug. 29, 2023) (citation modified) (citing *Chavez*, 844 F.2d at 693-94).

In asking the Court to find that the ALJ's treatment of the PAMFs was improper because the ALJ ultimately rejected the PAMFs' conclusion that there was not a material change, Plaintiff essentially asks the Court to adopt a rule that would potentially render consideration of PAMFs improper any time an ALJ concludes a claimant has overcome the *Chavez* presumption of continuing nondisability. Plaintiff fails to cite any case law supporting this argument, instead citing only the regulations concerning consideration of medical opinions and the requirement that the ALJ explain his consideration of the supportability and consistency factors. (*See* Doc. 24 at 15-16). Other courts have rejected Plaintiff's argument and the undersigned finds their reasoning for doing so persuasive. *E.g., Tansy v. Comm'r of Soc. Sec.*, No. CV-21-1873-PHX-SMB (JFM), 2022 WL 16752321, at *13 (D. Ariz. Sept. 22, 2022) (rejecting argument that an ALJ errors where he finds new and material changes justifying the reopening of an application and nevertheless adopts a medical consultant's RFC opinion where the consultant found "no significant new and material changes"). Importantly, Plaintiff fails to advance any specific argument concerning the supportability and consistency of the PAMFs.

In the absence of any authority supporting Plaintiff's position and given that remand is warranted on different grounds addressed below, the Court declines to set a sweeping precedent that an ALJ's reliance on PAMFs that determined there was no material change while the ALJ determined there was a material change amounts to reversible error, especially given that the ALJ conducted an independent review of the medical record in reaching his decision. *See Plummer v. Berryhill*, 747 F. App'x 631, 631-32 (9th Cir. 2019) (finding ALJ's misapplication of res judicata under *Chavez* to be harmless error because the ALJ's "decision did not rest solely on res judicata" and the ALJ "also conducted a thorough review of the medical records and testimony to make an independent nondisability finding"). Accordingly, based on the arguments advanced by Plaintiff, the Court finds no error in the consideration of the PAMFs.

**C. NP Cesar**

On June 13, 2019, NP Cesar completed a medical opinion form regarding Plaintiff. (AR 657-59). Cezar listed Plaintiff's diagnosis as degenerative disc disease of the lumbar spine and listed clinical findings as "positive straight leg raising BLE's, + axial pain." (AR 657). Cesar

opined that Plaintiff could lift less than 10 pounds occasionally, could stand and walk or sit for 4 hours but would need to change position every 20 minutes, and needed to walk around for 15 minutes after 45 minutes. (AR 657-58). Plaintiff could never twist, stoop, crouch, or climb stairs and ladders, and his impairments limited his ability to reach, handle, finger, feel, and push/pull. (AR 658). However, Plaintiff had no environmental restrictions. (AR 658). Cesar anticipated Plaintiff would be absent from work more than four times per month. (AR 659).

In discussing Cesar's opinion, the ALJ noted it was a "checkbox questionnaire" and summarized the opined limitations. (AR 25). The ALJ concluded:

> This opinion is inconsistent with the medical evidence of record, including indication that the claimant's back condition revealed mild reduced range of motion and then in June 2018 he had a normal gait (Exhibit D3F). Additionally, pain management notes reveal that the claimant's pain is sufficiently controlled with medications. In April 2019, the claimant was observed to have a normal gait and was not using an assistive device for ambulation. Physical findings noted 5/5 strength in the lower extremities except for the left ankle of 4/5 (Exhibits D16F/D23F/20-22). There is no support for any limitations of the upper extremities. Because this opinion is inconsistent with the objective evidence of record, it is not persuasive.

(AR 25).

Plaintiff argues the ALJ erred in rejecting Cesar's opinion. (Doc. 24 at 20-24). After summarizing portions of the medical record, Plaintiff argues the ALJ pointed to "a few random negative examination findings but ignore[d] the vast majority of positive examination findings, imaging findings, failed efforts with injections and medications, and finally the fact that [Plaintiff] had to undergo surgery." (*Id.* at 23). Further, Plaintiff argues the opinion is not overly restrictive because it is "not an opinion where the provider opined that the patient had no functioning" but rather was based on Cesar's treatment of Plaintiff. (*Id.* at 24). Additionally, Plaintiff argues he "did not have sustained 'control' of his symptoms with medications or with injections – instead, he was advised to have surgery because his symptoms were not controlled." (*Id.*).

The Commissioner argues the ALJ addressed both the supportability and consistency factors and "[a]t most, Plaintiff has presented an alternate interpretation of the evidence, but it is

11

the ALJ's interpretation that is entitled to deference." (Doc. 26 at 18 (record cite omitted)). The Commissioner asserts "[t]he ALJ reasonably found Plaintiff's clinical signs were inconsistent with Nurse Cesar's less than sedentary limitations, which also lacked documented support on the check off form and in the nurse's treatment notes.[3] (*Id.*).

Although additional explanation of the ALJ's conclusion may have been beneficial, the ALJ's decision to discount Cesar's opinion based on its inconsistency with the record is supported by substantial evidence. As the ALJ indicated, the record contains indications that Plaintiff had only mild reduction in range of motion in his back, had a normal gait and full or almost full strength in all extremities, and was able to "sufficiently" control his pain with medications. (AR 25; *see* AR 450 ("pain is relieved by pain/RX meds"); AR 453 (mildly reduced range of motion and normal gait); AR 601 (noting "sufficient relief" with medication); AR 602 (normal gait without assistive device); AR 693 (noting "sufficient relief" with medication)). Based on these findings, it was reasonable for the ALJ to conclude Cesar's opined restrictive limitations were inconsistent with the record as a whole. Contrary to Plaintiff's argument, the ALJ did not ignore other positive findings because he explicitly discussed these findings in his summary of the medical evidence. (*See* AR 22-24). Plaintiff is essentially asking the Court to reweigh the evidence in his favor but "[w]hen the evidence can rationally be interpreted in more than one way, the court must uphold the ALJ's decision." *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021) (citation modified). Because substantial evidence supported the ALJ's conclusion that Cesar's opinion was inconsistent with the record, the ALJ did not err in finding the opinion unpersuasive.

**D. Dr. Razzaq**

On June 25, 2019, Dr. Razzaq completed a Cardiac Residual Functional Capacity Questionnaire regarding Plaintiff. (AR 660-62). Dr. Razzaq indicated Plaintiff suffered from "congestive heart failure (nonischemic cardiomyopathy)" and had a New York Heart Association ("NYHA") Functional Classification of III. (AR 660). With respect to "clinical findings, labs

---

[3] Plaintiff's reply brief does not substantively address Cesar's opinion beyond reasserting arguments from her initial brief. (*See* Doc. 27 at 6-7).

and test results which show [Plaintiff's] medical impairments," Dr. Razzaq cited "dyspnea on exertion (Class III), easy fatiguability." (AR 660). Plaintiff's symptoms included shortness of breath, fatigue, and dizziness, as well as occasional anginal pain. (AR 660). Dr. Razzaq checked boxes on the questionnaire indicating Plaintiff had a marked limitation in physical activity and was incapable of even "low stress jobs." (AR 660). Dr. Razzaq opined that Plaintiff could walk "1-2 blocks" without rest, could sit for 30 minutes at a time, and stand 20 minutes at a time. (AR 661). Plaintiff needed the opportunity to shift at will from sitting or standing/walking, would need to take 2-3 unscheduled work breaks in an 8-hour work day, and would need to elevate his legs after 20 to 30 minutes of sitting. (AR 661). Dr. Razzaq further opined that Plaintiff could occasionally lift up to 10 pounds, rarely lift 20 pounds, and never lift 50 pounds; could occasionally twist, stoop, and crouch, and rarely climb ladders and stairs; and needed to avoid concentrated exposures to wetness, humidity, and noise, avoid even moderate exposure to extreme cold or heat, and avoid all exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. (AR 662). Plaintiff would also be expected to be absent from work more than four times per month. (AR 662).

The ALJ found Dr. Razzaq's opinion not persuasive, noting it was "inconsistent with the objective evidence of record, and appears to be overly restrictive." (AR 26). The ALJ found the opinion was inconsistent with Plaintiff's "admitted functional capabilities," citing Plaintiff's reported "ability to shop, carry grocery bags, and drive." (AR 26 (citing AR 365-69)). Additionally, the ALJ found the opinion inconsistent with the medical records because Plaintiff's heart condition was "noted to be stable, with an ejection fraction of 45 to 50%" and Plaintiff had recently been cleared for "significant back surgery, requiring cardiac clearance." (AR 26).

Plaintiff argues the ALJ erred in relying on his daily activities to reject Dr. Razzaq's opinion because the activities listed in the cited form are "not inconsistent with Dr. Razzaq's opinion" because the form "described a total of one hour and a half of activity once a month." (Doc. 24 at 28). To the extent the ALJ relied on the use of the term "stable" and Plaintiff being cleared for surgery from a cardiac perspective, Plaintiff argues "stable" is "a relative term that is undefined" such that it does not necessarily mean his condition has improved and clearance for

13

surgery to address his severe back pain did "not mean that the patient is without cardiac symptoms." (*Id.* at 28-29). Finally, Plaintiff argues the ALJ erred in not considering his NYHA Class II or III level of functioning because "Class II limitations mean that the patient is fine at rest BUT ordinary activity results in fatigue, palpitation, dyspnea (shortness of breath)" and "[p]erforming full time light work would seem to meet the definition of 'ordinary activity.'" (*Id.* at 29-30).

The Commissioner argues the ALJ reasonably found Dr. Razzaq's opinion unpersuasive. (Doc. 26 at 19). The Commissioner points to the ALJ's conclusion that the limitations were inconsistent with the record and Plaintiff's own admitted capabilities. (*Id.* at 19-20). Further, the Commissioner asserts the ALJ did acknowledge Plaintiff's NYHA classification, but such is based on "subjective symptom complaints" and is not a statement from a medical source. (*Id.* at 21).

The Court finds Plaintiff's arguments persuasive. While the ALJ cited Plaintiff's reported "ability to shop, carry grocery bags, and drive," the Court's review of the relevant questionnaire reveals far more limited responses. Plaintiff indicated the most he walked was "once a month" at the grocery store or the doctor, with trips to the grocery store taking about an hour and a half. (AR 367). He could carry grocery bags from the house to the car once a month. (AR 368). He drives 30 to 35 minutes at a time. (AR 368). As Plaintiff argues, given the limited functions Plaintiff reported, it is unclear how his minimal activities are inconsistent with Dr. Razzaq's limitations or indicative of an ability to perform full time work.

Further, while the ALJ also indicated Plaintiff's heart condition was "stable," the Court agrees with Plaintiff that this is an undefined term that does not necessarily indicate Plaintiff is without limitations from his cardiac impairments. In fact, the record indicated Plaintiff was "stable *and had class II symptoms*" and would be continued on medications. (AR 864 (emphasis added); *see also* AR 577, 646 (noting Plaintiff was "stable" with dyspnea)). The ALJ fails to adequately explain why Plaintiff's "stable" condition and clearance for heart surgery are inconsistent with Dr. Razzaq's opined limitations, which appear to be geared at avoiding aggravating Plaintiff's heart condition.

14

Based on the foregoing, the ALJ's conclusion that Dr. Razzaq's limitations were inconsistent with the record is not supported by substantial evidence. Thus, the ALJ erred in his consideration of the opinion. Further, because the Court cannot say that this error was inconsequential to the ultimate nondisability determination, the error was not harmless. *Tommasetti*, 533 F.3d at 1038.

**E. NP Velasquez**

On July 18, 2019, NP Velasquez completed a medical opinion form concerning Plaintiff. (AR 671-73). Plaintiff's diagnoses included essential hypertension, degenerative disc disease lumbar spine, allergies, and "failure (nonischemic cardiomyopathy) class III implantable cardioverter defibrillator." (AR 671). In spaces for clinical findings and signs and symptoms, Velasquez listed dyspnea on exertion class III, easy fatiguability, and chronic low back pain. (AR 671). Velasquez indicated Plaintiff could lift less than 10 pounds occasionally, could stand and walk less than 2 hours a day, and could sit less than 2 hours a day. (AR 671). Plaintiff needed the ability to shift positions at will, would need to change position after 20 minutes of sitting or standing, would need to walk around for 15 minutes after 45 minutes, and would need to lie down at unpredictable intervals. (AR 672). Velazquez cited "dyspnea fatigue" as supporting these limitations. (AR 672). According to Velasquez, Plaintiff could never twist, stoop, crouch, or climb stairs and ladders; should avoid concentrated exposures to wetness, humidity, and noise; should avoid even moderate exposure to extreme cold or heat; and should avoid all exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. (AR 672). Plaintiff's impairments also affected his ability to reach, handle, finger, feel, and push/pull. (AR 672). Velesquez also expected Plaintiff to be absent from work more than four times per month. (AR 673).

In considering Velasquez's opinion, the ALJ noted that it was a "checkbox form" and summarized the relevant findings. (AR 26). The ALJ concluded "this opinion is inconsistent with the evidence of record as discussed in detail above, and is not found to be persuasive as it is overly restrictive." (AR 26).

Plaintiff argues "the ALJ's rationale is not supported by substantial evidence." (Doc. 24 at 25-26). He asserts that while Velasquez's opinion is a "'checkbox' form in some parts,"

"[t]here are many parts of the opinion that are not 'checkbox' questions" and Velasquez "identified the basis of her opinion in narrative sections." (*Id.* at 25). Additionally, Plaintiff argues Velasquez's opinion "is the only opinion that considers the functional effect of the combination of impairments" and nothing in the record "refutes the opinions of medical professionals that Stage III congestive heart failure does not cause easy fatigability or shortness of breath on minimal exertion." (*Id.* at 26). The Commissioner argues that "[a]lthough the ALJ did not directly state why NP Velasquez's opinion was unsupported and inconsistent, the Court may draw inferences from the reasons the ALJ gave for rejecting NP Cesar's and Dr. Razzaq's opinions and impute them to this opinion. (Doc. 26 at 23 (citing *Magallanes v. Bown*, 881 F.2d 751, 755 (9th Cir. 1989)).

The conclusory nature of the ALJ's analysis of Velasquez's opinion makes it impossible for the Court to assess whether the ALJ properly considered the opinion's consistency with the record. To the extent the ALJ rejected Velasquez's opinion for the same reasons he rejected Dr. Razzaq's, such conclusion would not be supported by substantial evidence given that the limitations are not inconsistent with Plaintiff's stable heart condition and limited reported activities. Accordingly, as with Dr. Razzaq's opinion, the ALJ's treatment of Velasquez's opinion is not supported by substantial evidence.

**F. Remedy**

Plaintiff asks that the Court reverse the ALJ's decision and award benefits "as the three opinions establish disability." (Doc. 24 at 27). Defendant argues that should the Court find error in the ALJ's analysis, the appropriate remedy is remand for further proceedings. (Doc. 26 at 25-26). "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).

As discussed above, the ALJ erred in considering the supportability and consistency of certain medical opinions. Based on these errors, the Court concludes remand for further

proceedings is warranted to allow for additional administrative proceedings to remedy the deficiencies in the ALJ's opinion. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits").

### IV.  CONCLUSION AND ORDER

For the reasons stated above, the Court ORDERS as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 24) is GRANTED;
2. The decision of the Commissioner is reversed, and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order; and
3. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Eddie E. Hensley and against Defendant Commissioner of the Social Security Administration.

IT IS SO ORDERED.

Dated: __August 27, 2025__                    _____
                                               UNITED STATES MAGISTRATE JUDGE